IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

VICTOR M. JAVITCH, Receiver,

                Plaintiff,          Case No. 3:01 CV 780

  -vs-

                                   MEMORANDUM OPINION

FIRST UNION SECURITIES, etc., et al.,

                Defendant.

KATZ, J.

    This matter is now before the Court on cross-motions for summary judgment relating to arbitration. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons stated below, Defendants' motion for summary judgment compelling arbitration of the claims asserted by Plaintiff (Doc. 71) is well taken, and the same will be granted. The Plaintiff's motion for summary judgment (Doc. 69) will be denied.

**I. Factual Background**

    This is one of many cases brought by the Receiver early in this viatical litigation against brokerage firms. See *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 621-622 (6th Cir. 2003). The Court will set forth a brief statement of the pertinent facts.

    Plaintiff, Victor M.. Javitch, was appointed receiver for Capital Fund Leasing, LLC ("CFL") and Viatical Escrow Services ("VES") in the case of *Liberte Capital Group, LLC v. James A. Capwill*, No. 99-CV-00818 (N.D. Ohio Jul. 15, 1999). In that case, Liberte brought suit against James A. Capwill, and two entities he controlled, VES, and CFL, for the wrongful transfer of escrow funds to the defendants' bank accounts or brokerage accounts in violation of defendants' duties to Liberte and their investors. Alpha Capital subsequently intervened in this suit and a

receiver was placed in control of Capwill's entities. Multiple civil and criminal actions were spawned as a result of the *Liberte* case, including the case *sub judice*.

The Receiver filed the present action on April 3, 2001, bringing claims against First Union and one of its brokers, Michael D'Angelo, for negligence; negligent supervision; breach of fiduciary duty; fraud; conspiracy to defraud; violation of the of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*; aiding and abetting in violation of the securities laws; conversion; and liability under the doctrine of "money had and received." The Receiver has since amended the Complaint to add counts of aiding and abetting breach of fiduciary duty and breach of trust; the Receiver has also dismissed the RICO and aiding and abetting claims against First Union.

The Receiver's claims in this suit derive from five accounts opened in 1998 and early 1999 by Capwill at Everen, a brokerage firm that was subsequently acquired by First Union in October 1999. One account was opened in Capwill's own name; one in the name of CFL; one in the name of a girlfriend; one in the name of a business associate, and one in the name of an ex-employee. On August 15, 1998 and on December 19, 1998, Capwill signed client agreements with Everen containing the following mandatory arbitration clause:

> I agree that all claims or controversies, whether such claims or controversies arose prior to, on or subsequent to the date hereof, between me and EVEREN and/or any of its present or former officers, directors, or employees concerning or arising from (I) any account maintained by me with EVEREN individually or jointly with others in any capacity; (II) any transaction involving EVEREN or any predecessor firms by merger, acquisition or other business combination and me, whether or not such transaction occurred in such account or accounts; or (III) the construction, performance or breach of this or any other agreement between us or any duty arising from the business of EVEREN or otherwise, shall be submitted to arbitration...
.
(Doc. 71, Exhs. A & B).

2

Defendants moved to compel arbitration of all the claims in this suit. In a memorandum opinion, this Court denied the motion (Doc. 20). That decision was appealed to the Sixth Circuit, who vacated and remanded this Court's decision declining to compel arbitration. *Javitch v. First Union Securities, Inc.*, 315 F.3d 619 (6th Cir. 2003). In its opinion, the Sixth Circuit determined that the Receiver, Javitch, was the proper party to assert claims on behalf of the seized entities. *Javitch*, 315 F.3d at 627. Thus, the Sixth Circuit found that "Javitch, who is bringing claims on behalf of VES and CFL, is bound to the arbitration agreements to the same extent that the receivership entities would have been absent the appointment of the receiver." *Id.* With regard to the arbitration agreements, the Sixth Circuit directed this Court as follows:

> If the [district] court determines on remand that Javitch's allegations challenge the validity of the arbitration agreements signed by Capwill on behalf of VES and CFL, that issue must be resolved before deciding the motions to compel arbitration. If valid agreements to arbitrate are found to exist, the court must determine whether the various disputes fall within the scope of the arbitration agreements.

*Id.* at 628. The Sixth Circuit also remanded on the issue of equitable estoppel for further clarifications, directing this Court to determine whether "Javitch, in asserting claims on behalf of VES and CFL, sought to benefit either directly or indirectly from the customer agreements that contained the arbitration clauses." *Id.* at 629.

Both parties have now filed motions for summary judgment relating to arbitration, which have been fully briefed and are ripe for disposition.

**II. Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

3

Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250(1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586(1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*,

20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

Pursuant to the Sixth Circuit's instructions on remand, this Court must determine whether Capwill, on behalf of CFL, entered into valid arbitration agreements and, if so, whether the various disputes in this case fall within the scope of those arbitration agreements. The Court must also determine whether the Receiver may be bound to the arbitration agreements under a theory of equitable estoppel.

In its opinion, the Sixth Circuit found that "[the Receiver], who is bringing claims on behalf of VES and CFL, is bound to the arbitration agreements to the same extent that the receivership entities would have been absent the appointment of the receiver." *Javitch*, 315 F.3d at 627.

Governing law states that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The language of the arbitration

clause contained signed by Capwill provides, broadly, that it applies to "any account maintained by me with EVEREN individually or jointly with others in any capacity . . . ." (Doc. 71, Exhs. A & B). Because the CFL account was "maintained" by Capwill in his capacity as officer and agent of CFL, the Receiver, who "stands in the shoes" of CFL, is bound by the plain terms of the arbitration clause signed by Capwill.

Moreover, the claims in this suit fall within the terms of the valid arbitration clause the Court has found to exist. That clause applies broadly to "all claims or controversies . . . between me and EVEREN and/or any of its present or former officers, directors, or employees . . . concerning or arising from (I) any account maintained by me with EVEREN individually or jointly with others in any capacity . . . ." (Doc. 71, Exhs. A & B). All of the claims in this suit arise from customer-broker relationships created by account agreements with Everen. As such, the claims here fall within the broad scope of a valid arbitration clause. See *Fazio*, 340 F.3d at 395-396 (finding that claims of "fraudulent activities," including "churning, unauthorized trading, and excessive risk-taking," "arose out of activities contemplated by [brokerage account] agreements."). The fact that some of the Receiver's claims sound in tort does not change the analysis. See *id*. at 395 ("[M]erely casting a complaint in tort does not mean that the arbitration provision does not apply.").

Finally, the Court must determine whether the Receiver may be bound to arbitration agreements executed by Capwill under a theory of equitable estoppel. Nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles. *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir.1990). A nonsignatory may be bound to an arbitration agreement under an estoppel theory when the nonsignatory seeks a direct (as opposed

to an indirect) benefit from the contract while disavowing an arbitration provision. *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 778-779 (2d Cir. 1995).

As the Receiver acknowledges, his claims in this suit all arise from the former relationship between Capwill and Defendants. (Doc. 76 at 14). That relationship was created and governed by brokerage agreements subject to arbitration provisions. The Receiver cannot both seek to benefit in this suit from the relationships created by those agreements, while disavowing the arbitration provisions. See *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen*, 206 F.3d 411, 418 (4th Cir.2000) (nonsignatory could not avoid contractual arbitration provision where the contract "provide[d] part of the factual foundation for every claim asserted" against defendant.). Therefore, the Court finds that equitable estoppel applies to bind the Receiver to arbitrate all of his claims in this suit.

## III. Conclusion

For the foregoing reasons, the Defendants' motion for summary judgment as to arbitration (Doc. 71) is granted, and the Plaintiff's motion for summary judgment (Doc. 69) is denied. denied. This case is stayed pending the completion of the arbitration.

IT IS SO ORDERED.

                                                s/ *David A. Katz*
                                                DAVID A. KATZ
                                                U. S. DISTRICT JUDGE