IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


VICTOR M. JAVITCH, Receiver,

                              Plaintiff,                    Case No. 3:01 CV 780

              -vs-
                                                           MEMORANDUM   OPINION
FIRST UNION SECURITIES, et al.,

                              Defendants.

KATZ, J.

        This matter is before the Court on a request by the Arbitration Board of the Financial

Industry Regulatory Authority for a determination regarding the Receiver's ability to pursue

certain claims in arbitration.  (Doc. 97).  The case has been fully briefed (Doc. Nos. 100-07), and

on June 23, 2014, the Court conducted oral arguments.

                              I. Factual Background

        This is one of many cases brought by the Receiver early in this viatical litigation against

brokerage firms.  *See Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 621–22 (6th Cir.  2003).

        Victor M. Javitch was appointed receiver for Capital Fund Leasing, LLC ("CFL") and

Viatical Escrow Services ("VES") in the case of *Liberte Capital Grp., LLC v. James A. Capwill*,

No. 99-CV-00818 (N.D. Ohio July 15, 1999).  In that case, Liberte brought suit against James A.

Capwill, and two entities he controlled, VES and CFL, for the wrongful transfer of escrow funds to

the defendants' bank accounts or brokerage accounts in violation of defendants' duties to Liberte

and their investors.  Alpha Capital subsequently intervened in this suit and a receiver was placed in

control of Capwill's entities.  Multiple civil and criminal actions were spawned as a result of the

*Liberte* case*,* including the case *sub judice.*

The Receiver filed the present action on April 3, 2001, bringing claims against First Union and one of its brokers, Michael D'Angelo, for negligence; negligent supervision; breach of fiduciary duty; fraud; conspiracy to defraud; violation of the of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*; aiding and abetting in violation of securities laws; conversion; and liability under the doctrine of "money had and received." The Receiver amended the complaint to add counts of aiding and abetting, breach of fiduciary duty, and breach of trust. The Receiver also dismissed the RICO and the aiding and abetting claims against First Union.

The Receiver's claims in this suit derive from five accounts opened in 1998 and early 1999 by Capwill at Everen, a brokerage firm that was subsequently acquired by First Union in October 1999. One account was opened in Capwill's own name; one in the name of CFL; one in the name of a girlfriend; one in the name of a business associate; and one in the name of an ex-employee. On August 15, 1998, and on December 19, 1998, Capwill signed client agreements with Everen containing the following mandatory arbitration clause:

> I agree that all claims or controversies, whether such claims or controversies arose prior to, on or subsequent to the date hereof, between me and EVEREN and/or any of its present or former officers, directors, or employees concerning or arising from (I) any account maintained by me with EVEREN individually or jointly with others in any capacity; (II) any transaction involving EVEREN or any predecessor firms by merger, acquisition or other business combination and me, whether or not such transaction occurred in such account or accounts; or (III) the construction, performance or breach of this or any other agreement between us or any duty arising from the business of EVEREN or otherwise, shall be submitted to arbitration . . . .
> .

(Doc. No. 71, Ex. A & B).

Defendants moved to compel arbitration on all the claims in this suit.  In a memorandum opinion, this Court denied the motion.  (Doc. No. 20).  That decision was appealed to the Sixth Circuit, who vacated and remanded this Court's decision declining to compel arbitration.  *Javitch*, 315 F.3d at 629.  The Sixth Circuit determined that the Receiver was the proper party to assert claims on behalf of the seized entities.  *Id*. at 627.  The Sixth Circuit found that "Javitch, who is bringing claims on behalf of VES and CFL, is bound to the arbitration agreements to the same extent that the receivership entities would have been absent the appointment of the receiver."  *Id*. With regard to the arbitration agreements, the Sixth Circuit directed this Court as follows:

> If the [district] court determines on remand that Javitch's allegations challenge the validity of the arbitration agreements signed by Capwill on behalf of VES and CFL, that issue must be resolved before deciding the motions to compel arbitration.  If valid agreements to arbitrate are found to exist, the court must determine whether the various disputes fall within the scope of the arbitration agreements.

*Id*. at 628.  The Sixth Circuit also remanded the case on the issue of equitable estoppel for further clarification, directing this Court to determine whether "Javitch, in asserting claims on behalf of VES and CFL, sought to benefit either directly or indirectly from the customer agreements that contained the arbitration clauses."  *Id.* at 629.

This Court subsequently granted Defendants' motion for summary judgment as to arbitration (Doc. No. 71) and stayed the proceeding pending the completion of arbitration.  (Doc. No. 85).

## II.  Current Dispute

A dispute has now arisen in the arbitration proceeding regarding the scope of the Receiver's standing to pursue claims for VES and CFL.  On December 12, 2012, the parties reached a written stipulation on this issue, which remained in effect for a year.  However, the

3

parties have now determined that they have irreconcilable differences regarding the application and impact of this stipulation. The Arbitration Board has certified the matter to this Court for clarification on issues relating to the scope of the Receiver's claims in arbitration.

The certified issues from the Arbitration Board are as follows:

> Whether Claimant, in his capacity as Receiver for Viatical Escrow Services ("VES") and Capital Fund Leasing ("CFL"), can assert claims for money damages to recover funds deposited with Respondents which were held by VES for the benefit of non-party customers under trust property theories.

> If so, does the doctrine of *in pari delicto* defeat or diminish such claims.

### III.  Discussion

Regarding the first question, the Court finds that the Receiver *cannot* assert claims for money damages to recover funds deposited with Respondents which were held by VES for the benefit of non-party customers under trust property theories.  As the Sixth Circuit has explained:

> The general rule is that a receiver acquires no greater rights in property than the debtor had and that, except as to liens in existence at the time of the appointment, the receiver holds the property for the benefit of general creditors under the direction of the court. *In re K-T Sandwich Shoppe of Akron*, 34 F.2d 962, 963 (6th Cir. 1929).  Because they stand in the shoes of the entity in receivership, receivers have been found to lack standing to bring suit unless the receivership entity could have brought the same action. *See, e.g., Goodman v. FCC*, 182 F.3d 987, 991–92 (D.C. Cir. 1999) (receiver did not have standing to sue on behalf of customers and creditors of entity in receivership); *Scholes v. Lehmann*, 56 F.3d 750, 753–55 (7th Cir. 1995) (receiver for corporation could sue for diversion of assets as fraudulent conveyances by controlling shareholder).

*Javitch*, 315 F.3d at 625.  The Sixth Circuit further noted:

> Fraud on *investors* that damages those *investors* is for those *investors* to pursue–not the receiver.  By contrast, fraud on the *receivership entity* that operates to *its* damage is for the *receiver* to pursue (and to the extent that investors as the holders of equity interests in the entity may ultimately benefit from such pursuit, that does not alter the proposition that the receiver is the proper party to enforce the claim).

4

*Id.* (emphasis in original and citation omitted).  It is the Receiver's sole responsibility "by various means, including the institution of litigation to preserve the Receivership property."  *Id.* at 626. Finally, the court stated:

> We are convinced, based on our assessment of both the claims being asserted by Javitch and the authority granted to him by the order appointing him as receiver, that the district court properly found that Javitch has asserted claims belonging to the receivership entities.  This court explained, albeit in another context, that although the stated objective of a receivership may be to preserve the estate for the benefit of creditors, that does not equate to a grant of authority to pursue claims belonging to the creditors.  *See Jarrett v. Kassel*, 972 F.2d 1415, 1426 (6th Cir. 1992) (customers could not rely on actions taken by corporate receiver, despite the receiver's authority to protect their interests in the receivership property).  Thus, we find that Javitch, who is bringing claims on behalf of VES and CFL, is bound to the arbitration agreements to the same extent that the receivership entities would have been absent the appointment of the receiver.

*Id.* at 627.

The Sixth Circuit made it explicit in *Javitch* that the Receiver may only assert claims regarding Receivership property.  Thus, he may not now seek to extend his authority to that of a trustee.  The Receiver's new argument that he may assert claims for money damages to recover funds deposited with Respondents which were held for the benefit of non-party customers under trust property theories is beyond the scope of the Receiver's authority.  *Id.* at 625.

Receiver's counsel, during her excellent oral argument, relied on *In re Cannon*, 277 F.3d 838 (6th Cir. 2002), and *McLemore v. Regions Bank*, 682 F.3d 414 (6th Cir. 2012), to support the Receiver's position that he may step into the role of a trustee to act for the benefit of non-party customers under trust property theories.  Neither decision is controlling in this case.  *Cannon* concerns interpretations of the bankruptcy code regarding whether funds held in a particular escrow account constitutes an express trust so as to be excluded from the debtor's estate.  *Cannon*,

5

277 F.3d at 849–50.  *McLemore* concerns the misconduct of an individual which led to the loss of millions of dollars from fiduciary accounts governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.  *McLemore*, 682 F.3d at 417–20.  This is neither a bankruptcy case, nor an ERISA case.  Both cases concern interpretations of statutes which are inapplicable in this dispurte.  Therefore, the Court is not persuaded that *Cannon* and *McLemore* support the Receiver's position.

The second issue from the Arbitration Board is "does the doctrine of *in pari delicto* defeat or diminish" the Receiver's newly asserted claims.  The equitable defense of *in pari delicto*, which literally means "in equal fault," is from the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct.  *Pinter v. Dahl*, 486 U.S. 662, 632 (1988).  The defense was traditionally limited to situations where the plaintiff bore "at least substantially equal responsibility for his injury" and culpability arose from the same illegal act.  *Id.* (citations omitted).  However, because the Court has determined that the Receiver may not assert the claims raised in the first question, the second question, which is dependent upon an affirmative answer to the first issue, is rendered moot.

### IV.  Conclusion

Accordingly, in response to the first certified question from the Arbitration Board, the answer is "No."  The second certified question is moot.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE

6